**SO ORDERED.**

**SIGNED this 15 day of November, 2007.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

IN RE:                                                              CASE NO.

**WAYNESBOROUGH FURNITURE, INC.**                                   **07-03437-8-RDD**

       **DEBTOR**

### ORDER CONVERTING CASE TO CHAPTER 7

This matter is before the court on the motion of Regions Bank to convert this case to chapter 7. In the alternative, Regions Bank requests that the court grant it relief from the automatic stay to pursue judgment against its collateral and that the court enjoin the use of its cash collateral. A hearing was held on November 14, 2007 in Wilson, North Carolina.

The debtor filed a petition for relief pursuant to chapter 11 on September 17, 2007. Regions Bank holds a note executed by the debtor in the original amount of $425,000.00. The note is secured by various property of the debtor, including but not limited to its inventory, proceeds, equipment and

accounts receivable.[1]  The amount owed on the note is currently approximately $450,000.00.  The account was in default prior to the filing of the debtor's petition.

The court entered an interim order granting the debtor's emergency motion to use cash collateral on September 24, 2007.  The return hearing on that order was also set for November 14, 2007.  Counsel for Regions Bank argues that the debtor should be denied the right to continue using its cash collateral because the debtor's obligations under the interim order and the goals set forth in the budget submitted with that order have not been realized.  Counsel further argues that the debtor will not be able to meet even a minimum amount of adequate protection to Regions Bank based upon the figures submitted with its September monthly report.  That report indicates that the debtor's current accounts receivable outstanding is $1,022,550.91.  At the first hearing on the debtor's use of cash collateral, the debtor stated that the accounts, if liquidated, were worth approximately $125,000.00.  The debtor's budget indicated projected collections of $13,800.00 for the month of September.  However, the September monthly report shows only $2012.10 in collections for a period of thirteen days.  Counsel for Regions argues that the debtor simply has too much to overcome and that there are no unusual circumstances to warrant a continued reorganization.

Counsel for New Century Bank, who has a lien on the debtor's accounts receivable, indicated that it joins in Regions Bank's motion to convert.  Counsel argued that the case has virtually no chance of reorganization, as the debtor has no operating funds and little inventory.  New Century Bank does not consent to the debtor's continued use of its cash collateral to purchase new inventory.

---

[1] There is some question as to whether Regions Bank security interest extends beyond the debtor's real property and inventory.  Because that issue is not before the court at this time, the court will take the financing statement signed on behalf of the debtor and filed by Regions Bank at face value.  This issue can be investigated by a chapter 7 trustee.

Counsel argues that the value of the floor samples the debtor seeks to purchase with the cash collateral will decrease in value quickly and that the creditors will thus lose some of their security. Counsel also provided the court with evidence that the debtor's corporate charter has been suspended. He also explained that the debtor had not timely established a debtor-in-possession account and has been using nonreported cash for purchases during the month of September, which violates the orders of the court.

In response, counsel for the debtor argues that the debtor's inventory has doubled from $10,000.00 to $20,000.00 since the filing of the petition. He indicates that the debtor also has accounts receivable valued at $125,000.00 and the Cottles' own commercial property valued at $195,000.00, which is leased to the debtor for its operation. Counsel explains that the debtor's corporate status was suspended because of a debt owed to the North Carolina Department of Revenue, which will be paid through the bankruptcy. Counsel for the debtor indicated that the debtor currently owes to the Internal Revenue Service $190,000.00 in pre-petition withholding taxes, as the quarterly withholding reports had not been filed for up to two years prior to the filing of the petition, and to the North Carolina Department of Revenue $10,000.00 in pre-petition withholding taxes and $250,000.00 in sales taxes. Combined, these priority claims would require monthly payments to cover pre-petition taxes in the amount of $9,100.00. Mr. Cottle continues to drive a 2006 Lincoln pickup truck owned by the debtor and financed with BB&T. Counsel indicated an adequate protection payment of $300.00 would be made to BB&T, or in the alternative, the vehicle might be surrendered. The debtor will also be proposing an adequate protection payment to Regions Bank in the amount of $1,000.00 per month, which is based upon the value of its collateral, not the amount of the debt. Finally, counsel argues that pursuant to 11 U.S.C. § 1112(b)(1), cause has to

be established before a case can be converted from chapter 11 to chapter 7, and that cause does not exist in this case.

Mr. Terry Cottle, president of the debtor, testified that he has been in the furniture business since 1986. He indicated that he had cut every expense possible since the filing of the bankruptcy and feels he just needs inventory in order to make his business successful. He testified that, while collecting money on behalf of CheckFree Pay, the debtor handled approximately 10,000.00 transactions per month. This generated a lot of foot traffic through the store, which resulted in sales. Since CheckFree Pay is no longer doing business with the debtor, the debtor's customer base has decreased. Mr. Cottle testified several times that the debtor owner-financed approximately 90% of its sales. He indicated that he tried to assist people who normally would not be able to purchase furniture on credit because of their credit history. In determining to whom he would extend credit, he indicated that he reviewed the customer's credit report, prior history with the store, and would talk with the customer to get a feel for the person. Out of the approximately 450 accounts the debtor currently has in receivables, he indicated that 40% are regular payers. Mr. Cottle further testified that some of the accounts receivable had been sold to finance companies over the past year and that the least collectible accounts remained. Based on this experience, Mr. Cottle testified that, if he had $50,000.00 in inventory, he could generate accounts totaling $150,000.00, which he could in turn sell within six months for $90,000.00. Mr. Cottle testified that during October, the debtor collected approximately $14,000.00 in prepetition accounts receivables and had cash sales of approximately $2,500.00. Upon questioning by the court, Mr. Cottle testified that the debtor had yet to file its 2006 federal corporate tax returns. He indicated that the debtor had filed for an extension to October 15, 2007, but had still failed to file. Mr. Cottle testified he fraudulently transferred in January 2007, his

individual Wachovia Securities account valued at $250,000.00, to Challenger Resources, LLC, which was created by Mr. Cottle to prevent his creditors from reaching his stock assets.

Based upon the foregoing, the court finds that the debtor's credit policies and sales terms are suspect. Mr. Cottle testified that he "serves customers no one else really wants." Mr. Cottle's testimony regarding his ability to convert $50,000.00 worth of inventory into $90,000.00 by the sale of accounts receivables would still not provide sufficient funds for the continued operation of the business and provide enough money to fund a plan. With no lender willing to finance the debtor's inventory, the value of the accounts receivable will continue to diminish if the operation is allowed to continue.

> 11 U.S.C. § 1112(b) provides
>
> (1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent *unusual circumstances* specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes *cause*.

(emphasis added). In this case, there are no unusual circumstances which would establish that conversion is not in the best interests of the creditors and the estate. Under subsection (2) of § 1112(b), the unusual circumstances which would warrant the court's failure to convert are

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in section 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A) ---
>     (i) for which there exists a reasonable justification for the act or omission; and
>     (ii) that will be cured within a reasonable period of time fixed by the court.

5

In this case, it is doubtful that New Century Bank or Regions Bank would vote to confirm any proposed plan. Also, the debtor-in-possession has no lender to finance its inventory. Finally, the only proposal for financing the inventory is Waynesborough's request to borrow up to $50,000.00 from the individual debtors, Terry and Susan Cottle, who would purportedly obtain funds from the avoidance of a fraudulent transfer by Mr. and Mrs. Cottle of a Wachovia Securities Account to an entity named Challenger Resources, LLC. New Century Bank has a lien in the Wachovia Securities Account up to a value of $250,000.00. The value of the stock account on September 30, 2007 was $250,513.56. The debtor has failed to establish any unusual circumstances to forestall conversion if cause is established.

Cause exists to convert the case to a chapter 7. Pursuant to § 1112(4)(A), cause includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Here, the facts support the arguments of New Century Bank and Regions Bank that the value of the accounts receivable and inventory is continuing to decline. Because the debtor has no means of financing the purchase of more inventory, there does not appear to be a reasonable likelihood of rehabilitation. It would be in the best interests of the creditors and the estate to convert the case, rather than to dismiss it. Upon conversion, the appointed trustee can investigate the financial affairs of Waynesborough and can bring all appropriate avoidance actions. Conversion would also prevent further diminution of the value of the inventory and the accounts receivable.

Based on the foregoing, the motion to convert to chapter 7 is **ALLOWED**. The Bankruptcy administrator is directed to appoint a chapter 7 trustee to administer the estate and to perform the

duties set forth in 11 U.S.C. § 704. Therefore, the pending motions for use of cash collateral and application to employ Terry D. Cottle, Sr. as President are moot.

**SO ORDERED**.

**END OF DOCUMENT**